LORILLARD *v.* COSTER, 14 Wend. 255, 399.
In Ch., 5 Paige, 172, 234.

*Trust estate for twelve lives, with remainders over ; Perpetuity ; Trust to receive and pay over under sec. 55th of Statute of Trusts.*

APPEAL from a decree of the Chancellor.

The bill in this case was filed by the executors of the testator for the purpose of settling the construction of the will and codicil of George Lorillard, of the city of New York, who died in September, 1832, a bachelor, leaving real and personal estate worth about three millions of dollars; most of which was in real estate in the city of New York. His mother survived him but a few days. He left two brothers of the whole blood, Jacob and Peter; one brother and sister of the half blood ; a niece, Mrs. Bartow, daughter of a deceased brother, Blaze Lorillard, and two grand-nephews, George and Blaze Lorillard, sons of a deceased son of his brother Blaze. Upon the death of his mother, the persons enumerated were the only heirs-at-law.

By his will, made in October, 1831, he appointed his brother Jacob, and twelve of his nephews and nieces of the whole blood, children of his brother Jacob, Peter and Blaze, trustees and executors, and devised to them as such, as joint tenants, and not as tenants in common, all his real and personal estate, in trust, for the uses and purposes declared in his will ; they were as follows :

*First*, as to his real estate in the city of New York, *to lease the same from time to time, and to receive the rents and profits thereof;* and out of such rents and profits to pay sundry legacies, and annuities there bequeathed ; and to account for, *pay over, and divide* the residue of such rents and profits, after deducting expenses and disbursements, to and among the twelve nephews and nieces who were named as executors and trustees in the will, and who were the only children of his brothers of the whole blood, during their natural lives ; and to the survivor or survivors of them, *to be divided equally between them or such of them as should from time to time be living, share and share alike."* The shares of the nieces and grand-nieces to be paid to them for their separate use and benefit free from the control or liabilities of their husbands.

*Secondly*, to convert all the residue of his real and personal estate into money, within three years after his death, and invest the same in the purchase of real estate in the city of New York ; and the clear rents and profits of it to be paid and divided by the executors and trustees to and among all the children of his three brothers, and the survivor or survivors of such children during their natural lives, to be equally divided among them, share and share alike, and with the same proviso as in the preceding clause. He also declared it to be his will and desire, that his said nephews and nieces should not alienate, sell, or transfer their shares of such rents and profits, or any part thereof, without the written consent of a majority of his executors and trustees ; that majority not to be less than three persons.

*Thirdly*, The will directed, that after the death of all his said nephews, all his estate then remaining should be equally divided among all the children of such nephews and nieces, and the surviving children of such of them as

might be dead, in equal proportions, *per stirpes,* and not *per capita*—special directions being given in the will as to the distribution ; which was not to be made until two years after the death of all his said nephews and nieces.

*Fourthly,* The testator provided that not less than *three* of his executors and trustees might execute the trust : also, if reduced to less than five by death or disability, the number should, from time to time, be increased to seven. Such new trustees were to receive 1-16th of the net income of the estate, during the time they acted as such, in lieu of their annuity.

By a codicil, made in December, 1831, he devised in fee to his nephew, P. L., jun., son of his brother Peter, a moiety of various parcels of real estate, and also a house and leasehold lot of ground in the city of New York, upon condition that he within two years after the testator's decease, pay to his executors and trustees $25,000, to be invested by them in trust for the uses and purposes declared in the second article of his will ; and upon the further condition that he should agree to pay $200, as an annuity to B. M. jr., for 10 years after the death of the testator : if these conditions were not accepted, the devise to be void, and the property to be sold, and proceeds applied as directed in the second article of the will. By the same codicil, he gave a life estate in a certain farm to a grand-nephew G. L. ; also another life estate in another farm to another grand-nephew, B. L. ; and a life estate in two other farms to his niece, Mrs. Barton ; directing that after such life estates, the trustees should sell the property and invest the proceeds as provided in the second article. He also gave annuities to the children of his half brother during their lives or until the death of all the children of his three brothers, B., P. and J. L., to be paid out of the fund created for the payment of annuities.

The will and codicil were proved, and letters testamentary issued to some of the nephews and nieces named in the will as executors and trustees. Catharine Holsman, the mother of the testator, made a will of her personal estate, previous to her death, and appointed her sons George and Jacob, and J. G. Coster, executors ; the two latter of whom took upon them the execution of the will.

The bill was filed by Jacob Lorillard, one of the executors

and trustees named in the will of his brothers; and the seven nephews and nieces who first took out letters testamentary on the will of George Lorillard, together with the husbands of such of the nieces as were married; for the purpose of settling the construction of the will, and to have such of the trusts as were valid, carried into effect under the direction of the court. Mrs. Bartow and her husband, she having refused to join in the suit, and the four executors and trustees, who were minors were, with the other heirs at law, made defendants.

They in their answers insisted, that the devises and bequests were illegal, except some of the specific devises and bequests contained in the codicil ; and they claimed to have the residue of the estate distributed as in case of intestacy. The rights of the infant defendants were submitted to the decree of the court.

The cause was first heard before the Vice Chancellor of the first circuit, (McCoun,) who decreed in favor of the validity of all the trusts contained in the first and second articles of the will.

The Vice Chancellor arrived at these conclusions; (See his opinion, 5 Paige, 179 :)

1. That the trusts of the second as well as of the first article were valid at common law.

2. That the trusts declared in the first article of the will were not an infringement of the common law rule as to perpetuities; he cites the case of *Bengough* v. *Eldridge*, (1 Sim. Rep. 173,) where the inheritance was suspended during the life of 28 persons ; and the trusts to be performed after their decease, were held valid by Sir John Leach, V. C. This decree was affirmed in the House of Lords, where it was established that a limitation by way of executory devise, not to take effect until after the determination of those lives, and a term of 21 years, as a term in gross, and without reference to the infancy of any person, is a valid limitation." (Reported under the title of *Cadell* v. *Palmer*, in the House of Lords, 1 Clark and Finn, 372.*

---

* It was held in the House of Lords, by all the judges in this case, that if to the term in gross of 21 years, be added the number of months equal to the

3. As to the trusts declared in the second article of the will, the Vice Chancellor held that by the expressions there used : " That after the death of all my said nephews and nieces, all my estate then remaining shall be equally divided among all the children of my said nephews and nieces," the testator intended exclusively those nephews and nieces, mentioned in the first article of his will, to whom he had given life estates, and that it did not extend to after born children of his brothers, if any should be born ; that the life estates, therefore, given to those nephews and nieces by the second article, being confined to those nephews and nieces who were then living, the period for the limitation over to take effect, did not exceed the common law rule. But even if the other construction prevailed, that then by well settled rules of law, it would not let in children born after the death of the testator.

4. The Vice Chancellor held that the trusts in both the first and second articles of the will, in favor of the nephews and nieces were also valid, under the provisions of the Rev. Stat. of 1830, relative to trusts and the suspension of the power of alienation. That the trusts as to their nature and purpose, were within the terms of the 3d clause of the 55th section, which provides, that express trusts may be created, 3. " To receive the rents and profits of lands, and apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of this title." He did not advert to the question since made, whether the trust as expressed in this will, " to pay over and divide the rents and profits," was equivalent to, and could be supported as a trust to " apply to the use" of the *cestui que trust*. As to the number of the *cestuis que trust*, he maintains that none of the provisions of the Rev. Stat. have declared that a trust shall not be created for the

---

longest or to the ordinary period of gestation, the limitation would be void. Mr. Baron Bayley, who delivered the opinion of the judges, says : " The unanimous opinion of the judges is, that such a limitation would be void, and too remote. They consider 21 years as the limit, and the period of gestation to be allowed only in those cases where the gestation actually exists."

benefit of more than a limited number of persons in being at the time or during the lives of any particular number. The 14th and 15th sections of the article " Of the Creation and Division of Estates,"* he holds, apply only to future estates. " They do not affect estates in possession or those where an immediate right of possession is conferred. It is still competent by deed or will to create an estate to take effect immediately in possession, in favor of any number of persons in being, as joint tenants for their lives, and for the life of the survivor; because, however numerous they may be, they have only to unite with the remainder-man or rever-sioner, and convey the whole estate in fee."

"But it is said, that devising the legal estate to trustees for the use of so many persons during life, is of itself an infringement of the rule, and invalidates the whole trust, because the trustees are not at liberty to convey; and *cestuis que trust* have no estate or interest in the lands which they can join in conveying, so long as any one of the twelve shall live; and consequently that the power of alienation is in suspense for a greater length of time than the lives of two persons in being." In answer to this objection, the Vice Chancellor says: " Except in contravention of the trust, I

---

⊦ * § 14. " Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this *Article*. Such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed.

§ 15. The absolute power of alienation, shall not be suspended by any condition or limitation whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate, except in the single case mentioned in the next section.

§ 16, provides that a contingent remainder in fee may be limited on a prior remainder in fee, to take effect if the person to whom the first is limited, die before attaining 21, or upon any other contingency which determines the first estate before the person to whom it is limited obtains full age.

§ 17. " Successive estates for life shall not be limited unless to persons in being at the creation thereof; and where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto, shall be void, and upon the death of those persons, the remainder shall take effect in the same manner as if no other life estates had been created. 1 Rev. Stat. 718. (2d Ed.)

no where find a trustee in whom the legal estate is vested, prohibited from conveying."

5. The question as to the limitation over at the death of the twelve nephews and nieces, the Vice Chancellor says, the counsel for the complainants have purposely avoided discussing, but that the defendants have urged the point as one necessarily involved in the decision ; because if that part is void, the whole is vitiated.  " That consequence in my judgment does not follow.  Even if void, I am decidedly of opinion that all the prior trusts are to be executed." *Beard* v. *Westcott*, 5 Barn. and Ald. 807; and 1 Turn. and Russ. 25.  If the defendants wished a decree setting aside or declaring void the remainder over, they should have filed a cross bill, as was done in *Thelluson* v. *Woodford*.  It has been objected that there are not parties in *esse* to enable the court to make a decree."  This the Vice Chancellor declined to determine, but expressed his opinion that the future estate thus created was void.

6. Nothing was said in his opinion or decree, as to the validity of the provision giving the one-sixteenth of the income to the grand-nephews and nieces, who might be selected as new trustees : nor as to the validity of an accumulation directed by the will of one-half of the share of Mrs. Bartow, in the rents and profits, and of the whole of J. L. jr.'s share for seven years, as provided in the codicil.

From this decree, all the defendants, except Peter Lorillard, the brother, and the four minor executors and trustees, appealed to the Chancellor.

The Chancellor held :

I.  " That this was a case in which the heirs at law of the testator, who insisted upon the invalidity of the whole trusts as to the rents and profits, and as to the ultimate limitation over to the children and grand children of the twelve nephews and nieces, had a right to ask for a decision of the court as to the validity of these several limitations, before the trustees could be considered as authorized to execute the power in trust in relation to investing the personal estate, and the proceeds of the real estate out of the city of New York.  That investment can be authorized by the court on-

ly so far as the trusts are legal and proper. And if the limitation over to the children and grand children of the twelve nephews and nieces, or any part of the previous trust, is void, then the investment must be made in such a manner as to secure the rights of those entitled to what is not well devised. So far as is necessary to settle the rights of the appellants, the executors and trustees must be considered as the legal representatives of the rights of persons not yet in *esse,* who could not, of course, be brought before the court as parties, and it is not the fault of the appellants that the grand-nephews and nieces of the testator, who were in existence at the commencement of this suit, were not made parties thereto.* If the question as to the want of proper parties had been suggested before the Vice Chancellor, it would have been the correct course to let the cause stand over, with leave to the complainants to amend their bill, so as to bring all necessary parties before the court. But as neither party raised the objection there, it was competent for the court to go on and settle the rights of the parties then before it ; which decree is of course without prejudice to the rights of those who are not before the court as parties, and who were entitled to be made parties before a decree could

---

* But in *Nodine* v. *Greenfield,* 7 Paige, 544, upon a bill of foreclosure, where the widow of the mortgagor took a life estate in the premises and the children of his brother then in *esse* took vested remainders in fee, as tenants in common therein, subject to open and let in after born children ; and subject to be divested by death during the life time of the widow, or to be defeated by the execution of a power of sale by the executors or the survivor of them, the Chancellor held that the children in *esse* at the time of filing the bill of foreclosure, having the first estate of inheritance in the mortgaged premises were necessary parties, and not having been made so, neither they nor the children born subsequently, were bound by the decree. In *Kimber* v. *Ensworth,* 1 Hare 293, and in *Hawkins* v. *Hawkins,* 1 id. 543, which were suits for the execution of a trust to sell real estate, &c., Vice Chancellor Wigram, refused to proceed on account of a defect of parties. There the personal representatives of the persons creating the trust were not before the court. In the case of *Baker* v. *Harwood,* 1 id. 327, which was a suit to administer an estate, he also refused to proceed, and ordered a reference to ascertain the parties interested.

be made against them definitively settling their contingent rights."

II. The Chancellor then declares that he agrees with the Vice Chancellor, that from the whole of this will taken together, the testator intended that the rents and profits of the real property directed to be purchased in the city of New York, should be divided among the twelve children of his brothers and sisters of the whole blood. " The principle of construction adverted to by the Vice Chancellor in his opinion in this case, is therefore correct as applied to the second section of the will. And a devise of the rents and profits to all the children of the three brothers as a class, would not include those who were not in *esse* at the death of the testator. (See Bro. C. C. 404, note a.) There is therefore no difference in the general devise of the rents and profits of the city property, of which the testator died seised, and those of the real estate directed to be purchased : or as to the ultimate limitation over after the death of the twelve nephews and nieces." He then comes to the first of the questions, on which he differs from the Vice Chancellor.

III. " The validity of the general trust in favor of the twelve nephews and nieces of the whole blood of the testator, depends upon the construction to be given to the 15th section of the title of the Rev. Stat., relative to the nature and qualities of estates in real property and the alienation thereof, in connection with other provisions of the same title, particularly in §§ 36, 55, and 63.

I may here remark that these sections, as well as the 15th, as it now stands, are alterations of the common law rules as to estates and interests in real property. And no reasonable doubt can be entertained that all the devises and bequests contained in this will and codicil, including the ultimate limitations over to the grand-nephews and nieces and their children, would have been valid previous to the Revised Statutes. (See *Cadell* v. *Palmer*, 1 Clark & Finn. R. 372.) As the law then stood, however, although the ultimate remainder in the property would have been inalienable until the expiration of two years after the death of the twelve nephews and nieces, the intermediate estate would not have been rendered absolutely inalienable pre-

vious to the Revised Statutes. The only way in which a conveyance of an absolute fee could be prevented was by the limitation of a future or contingent estate, in favor of a person not in *esse*, or not ascertained at the time of its creation. This of course would not affect or suspend the alienation of a present interest given to another person. And the legislature have done very little towards the improvement of the law in this respect, if they have enabled the owner of a large estate to give a present vested interest therein, which shall be absolutely inalienable during any number of lives in being at the creation of such interest; and have only removed obstructions which might have heretofore prevented the conveyance of future and contingent interests."

The Chancellor then urges upon various considerations, and among others, the *intentions* of the revisers, as manifested in their report; all of which are open to much criticism; "That neither the revisers nor the legislature have made such a mistake in the recent revision of the laws; and that the provisions of the 15th section were sufficiently broad and extensive to embrace every kind of estate, whether present or future, by which the power of alienation might be suspended beyond two lives."

IV. But the Chancellor further held, that if the 15th section related only to a suspension of the power of alienation by the creation of *future* estates, the trusts were still void, by the 36th section, which declares that dispositions of the rents and profits of lands, to *accrue* and be received at any time subsequent to the execution of the instrument creating such disposition, shall be governed by the rules established in that article, in relation to future estates in lands. (1 Rev. Stat. 725.*) The third subdivision of the 55th section, subjecting trusts of rents and profits, to all the rules previously prescribed in the first article, he holds had the effect to render that trust in this will invalid. The tes-

---

* *Section* 36. " Dispositions of the rents and profits of lands to accrue, and be received at any time subsequent to the execution of the instrument creating such disposition shall be governed by the rules established in this article, in relation to future estates in lands." (2 R. S. 720 ; 2d Ed.)

tator could make no disposition of his property or of the rents and profits, through trustees or otherwise, that would render the property inalienable during the lives of these twelve nephews and nieces, (p. 224.) And if the interest of the nephews and nieces in the rents and profits, is to be considered as of the nature of a joint tenancy, so as to prevent a partage of the property, and to render the whole inalienable until these twelve persons are all dead, he declares the whole trust in their favor void.

V. He then proceeds to examine the question which was not raised before the Vice-Chancellor, whether the interests of the twelve nephews and nieces in the rents and profits, is to be considered as of the nature of a joint-tenancy, or only as a tenancy in common with cross-remainders.—(p. 226.)

Upon this point, after stating that "where *all* the purposes of the trust as to *any share* of the trust property are illegal or cease, the estate of the trustees ceases also; and they then become tenants in common with the owner of that share, though as to the residue they remain joint tenants,"— 1 R. S. 727, § 44 and § 67,—he says; that he is "not aware that it·was ever seriously doubted, that where a part only of the trusts of a will were contrary to the rules of law, the intention of the testator could still be carried into effect, so far as consistent with legal rules, where it was possible to separate the legal from the illegal part of the trusts."

" If this testator, by his will, had made separate or distinct devises of the several undivided 1-12th parts of his estate to his nephews and nieces respectively, giving the rents and profits of each to them for life," then he admits that their interest in the rents and profits of their several shares must be in the nature of several tenancies in common, and not of joint tenants; although the legal estate was in the trustees, as well as the right to receive the rents and profits. And upon the death of one of the nephews or nieces, the legal estate in the hands of the trustees would cease as to that share, and *the heirs at law of the testator* would become tenants in common with the trustees. Such a disposition he does not deny, would be valid, as it would apply to each of the other shares of the nephews and nieces. But he

holds that, by this will, this is not the nature of their estates, —p. 229.)

VI. He says, " The conclusion at which I have arrived is, that their interest is in the nature of a tenancy in common for life, with cross-remainders ; and that such cross-remainders, so far as they are inconsistent with the 17th section of the statute, which prohibits the creation of more than two successive estates for life, *are void.* It is evident also, that the first cross-remainders which are limited upon the life estate of each, in his or her original share, as tenant in common, are *contingent interests,* in the nature of future contingent estates ; and such interests being inalienable, by the 63rd section of the statute,* even after they shall become vested in possession,—their respective original shares out of which they arise, are rendered inalienable for one life before the cross-remainders can vest in possession, and also during one other life after the cross-remainders shall have .vested. All the cross-remainders, except those limited to take effect upon the termination of the life estate of the nephew or niece who shall happen to die first, must necessarily suspend the power of alienation of portions of the estate for a longer period than the lives of two persons in being at the time of the testator's death ; and upon which lives the cross-remainders are, by the will of the testator, made to depend. Each of the twelve nephews and nieces had upon the death of the testator, a vested but an inalienable life estate in 1-12th share of the rents and profits devised. " Where, therefore, the owner of any original share dies subsequently to the death of any one of the other eleven who now has a contingent remainder limited upon the original life estate in such share, the alienation of that share will have been suspended for two lives in being at the creation of the estate." To the extent of that share, the Chan-

---

* *Section* 63. No person beneficially interested in a trust for the receipt of the rents and profits of lands can assign, or in any manner dispose of such interest ; but the rights and interest of every person for whose benefit a trust for the payment of a sum in gross is created, are assignable. (1 Rev. Stat. 724; 2d Ed.)

cellor holds the cross-remainders to the eleven survivors valid under the 15th section of the statute; the other eleven cross-remainders, between the survivors, he held void. The life estates he held to be valid.

VII. The limitation of the *sixteenth* to the new trustees, upon the same principles, as it was limited not to take effect until the number of the original trustees was reduced to *four*, he also held too remote and void.

From various branches of the decree entered under this decision, seven separate appeals were taken: the complainants, as well as six classes of the defendants having appealed. It is quite unnecessary to specify the different grounds of the appeals in detail; as the decision of the Court of Errors upon the two main points in controversy, to wit: the trusts for the twelve nephews and nieces in the 1st and 2d articles of the will, and the ultimate remainder to their children in fee; disposed in effect of all the other grounds of appeal of the different parties. After the case had been argued elaborately by the counsel for the seven sets of appellants, opinions were delivered by Savage, Ch. J., Nelson, J., and senators Maison, Young and Tracy, all, in favor, though on somewhat different grounds, of reversing the decree of the Chancellor. We shall give the conclusions of Ch. J. Savage upon the different questions made by him; afterwards noting where they are dissented from in any essential particular, in the opinions of the other members of the court.

The Chief Justice, in considering the case, as it was affected by the Revised Statutes, took three views of it:

I. The effect of the statute, *supposing* the trust to be embraced under the 3d subdivision of the 55th section.

II. Whether it is a trust under the 55th section at all.

III. If not embraced in the 55th section, whether the trust is valid as a power in trust. p. 297.

I. As to the effect of the statute, supposing the trust within the 3d subdivision of the 55th section, he held:

1. That if it be conceded that the trust in favor of the twelve nephews and nieces is authorized at all, for any time, by the 3d subdivision of Sect. 55th, the estate is rendered in-

alienable by the devise to the trustees, which by the devise itself necessarily continues during the continuance of twelve lives.  p. 327—32.

2. That the absolute power of alienation is also suspended by the creation of the remainder in favor of the grand nephews and nieces, which by the terms of the will is not to vest until two years after the death of the survivor of the nephews and nieces.

3. That the remainder thus created is *void;* but that the estate in the trustees if authorized by law, is not void; but that it would in that case be the duty of the court so to construe it as to sustain the trust during the continuance of the lives of *two* of the twelve nephews and nieces, by the application of the rule of approximation, or the doctrine of *cy pres,* which doctrine he considers as incorporated into the Revised Statutes.

4. That the right of the twelve nephews and nieces to " *enforce their trust in Chancery*" ought not to be likened to a legal or equitable estate : that their interest is inalienable ; but if otherwise, the *estate* itself would not be alienable; that the idea of *cross-remainders,* in the right which the twelve nephews and nieces have to enforce the trust in equity, has no real existence, but is entirely fanciful.

5. But, if real and they could be deemed to hold such estates, the devise to the trustees being expressly an estate in joint-tenancy, cannot be construed a separate devise or rather twelve separate devises, one in favor of each of the twelve ; and that if their interest is to be assimilated to an estate in lands, it must be subject to the restrictions upon future estates ; and having the effect to suspend the alienation of the estate for a longer period than allowed by law, it was void in its creation, and consequently that the trust being at an end, the trust estate itself is at an end.

II. Whether it is a *trust* under the 55th section at all ?  p. 328, he held,

1. That under the 3d subdivision of the 55th section of the statute, the *object* of the trust in the devise in question is not such as is sanctioned by the Revised Statutes; that the words there used, " *apply to the use of*" do not mean " *to pay over,*" and consequently that the trust itself is void

in its *purpose ;* that the trusts authorized by that subdivision are intended to be active trusts, in which the agency of a trustee is indispensable for the purposes of the trusts : not to constitute a person his own trustee, nor to effect a purpose disapproved by the law, to render real estate inalienable."

III. Whether the trust can be supported as a *power in trust ?* p. 328.

1. It cannot be sustained, as a *general* power in trust because such a power contemplates an absolute sale and division of the proceeds, and because such a power cannot be executed by the grantees thereof for *their own benefit.*\*

2. Nor can it be sustained as a *special* power in trust *first,* not under the 1st subdivision of special powers in trust† because it does not authorize a disposition limited to be made to any person or class of persons, other than the grantees of the power : and *second,* nor under the 2d subdivision, because the grantees of the power are designated as entitled to the benefit to arise from the disposition. In short, that no trust valid as a power in trust, is to be executed by the grantee for his own benefit. It is then beneficial.

The Ch. J. thus concludes : " That the devise, in so far as it conveys a trust estate for their benefit during the lives of the twelve nephews and nieces, is entirely void, and that the estate vests in the heirs at law.

The *annuities,* he holds, must also fail, as depending upon the same principles, and upon the trust for the lives of the twelve nephews and nieces and rendering the estate inalienable.

The legacies to the Theological Seminary and to St. Phil-

---

\* Stat. of Powers, § 94. A general power is in trust where any person or class of persons, *other than* the grantee of the power, is designated as entitled to the proceeds or any portion of the proceeds or other benefits to result from the alienation of the lands according to the power.

† § 95. A special power is in trust,

1. When the disposition which it authorizes is limited to be made to any person or class of persons other than the grantee of such power. 2. When any person or class of persons, other than the grantee, is *designated* as entitled to any benefit from the disposition or charge authorized by the power.

ip's church are held good, as clearly authorized by the 2d subdivision of the 55th section.*

The decree, he held, must be *reversed*.

Nelson, J. states the following as his conclusions : (p. 350)

I. That the *trust* in this case, " to receive the rents and profits and *pay them over*," is a valid trust within the 3d subdivision of the 55th section : and that the *application* need not be limited to the trustees." (On this point he dissents entirely from the conclusion of the Ch. Justice.)

II. That the interest of the *cestuis que trust* is in the nature of a *joint tenancy* for twelve lives, and that the power of alienation is suspended during that time, which is in violation of § 15th of the statute, limiting perpetuities.

III. That the estate in *joint tenancy*, being an *entirety*, the twelve nephews and nieces having but one estate in the whole, cannot be reduced to the limitation of two lives within the 15th section, and the trust term is therefore altogether void.

IV. That cross remainders between the nephews and nieces are not expressly declared in the will and cannot be implied : every intent being so declared that nothing is left to implication.

V. That if the estate of the twelve nephews and nieces could be considered in the nature of a tenancy in common with cross remainders, the trust term would still be void ; because by casting off the remainders and saving the life estates only, under the doctrine of *cy pres*, we should break up the trust fund, upon which the scheme of the will depends. It would be thereby entirely deranged, made inconsistent, unreasonable and impracticable ; every general and particular intent of the testator would be defeated."

He accordingly held that the decree should be reversed. Senator Maison concurred on all points with the conclusions of the Chief Justice, as did also Senator Young.

---

* 2. To sell, mortgage, or lease lands, for the benefit of legatees or for the purpose of satisfying any charge thereon. 1 Rev. St. 723. (2d. ed.)

Senator Tracy held that the trust was valid for *one-twelfth* of the rents and profits to each of the twelve during his or her life. He also held that the trust "*to receive and pay over*" the rents and profits was a *valid trust*, although not created in the words of the statute: "to apply them to the use of" the beneficiary; but on other grounds he was in favor of reversing the Chancellor's decree. He says: "In conclusion, though I believe the Chancellor's decree in this case is nearer to my notions of right than the decree which I apprehend this court is about to make, yet believing that in some respects that decree is wrong, I must vote, on the general question of affirmance or reversal, in favor of reversal.

The court unanimously *reversed* the Chancellor's decree.

☞ The decree in this case is given in 14 Wend. 396, 7, 8. It declares that the trusts in the *first* article of the will are all void except the bequest therein to the Theological Seminary, and to St. Philip's church, and those annuities which were not drawn in question by the appeal: that the real and personal estate descended to the heirs at law and next of kin, as though he had died intestate. It also declared, as the Chancellor had decreed, that the ultimate remainders over to the twelve grand-nephews and nieces were absolutely void, as well as the devise of the 1–16 to those who should act as trustees. The costs of all parties in the suits below and on appeal to be paid out of the funds in the hands of the executors.

The decree contains no reference to the question of the validity of a trust to "*pay over to*," instead of "apply to the use of" the cestuis que trust.